# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-13-00114-CV

**M. F. P., Appellant**

**v.**

**Texas Department of Family and Protective Services, Appellee**

### FROM THE COUNTY COURT AT LAW NO. 4 OF WILLIAMSON COUNTY
### NO. 11-2797-FC4, HONORABLE JOHN McMASTER, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

M.F.P. challenges the trial court's decree terminating his parental rights to S.P., contending by his sole issue on appeal that factually insufficient evidence supports the trial court's finding that termination is in the child's best interest. We will affirm the judgment.

## Background

S.P. was born in 1998, the oldest of five children born to the same mother. S.P. is the only one of these children alleged to be appellant's child. Appellant's attorney asserted that appellant has three other children. Appellant has never met the child subject of this suit because he did not believe the mother when she said she was pregnant with his child—he called her a "pathological liar." Since paternity testing prompted by this case proved him to be the child's father, appellant has exchanged letters with the child and spoken with him on the telephone. Appellant also provided as much as $100 in child support. At the time of the February 2013 trial, appellant had

been incarcerated for six-and-a-half years awaiting trial on racketeering charges. He was confined to a segregation unit in the California detention center because of fighting while incarcerated.

The child lived with his maternal grandmother, his maternal uncle, and his siblings for much of his life even while in the primary care of the child's mother. The Department intended that his grandmother adopt S.P. along with his siblings. Adoption of this child would entitle his grandmother to a $400 per month subsidy.

Before this trial, the trial court terminated all other parental rights to the child and his siblings. Though there was minimal reference to the conditions prompting this suit, the termination order reveals that the court found that the children's mother and the other children's father had knowingly placed or knowingly allowed the children to remain in conditions or surroundings that endangered the children's physical or emotional well-being, engaged in conduct or knowingly placed the children with persons who engaged in conduct that endangered the children's emotional or physical well-being, constructively abandoned the children, failed to comply with services, and used controlled substances in a way that endangered the children and violated other restrictions.

The trial court found that appellant had engaged in conduct or knowingly placed the children with persons who engaged in conduct that endangered the child's physical or emotional well-being. The court also found that termination of appellant's parental rights was in the child's best interest. Appellant challenges only the best-interest finding on appeal.

**Standards of proof and review**

Clear and convincing evidence must support the decision to terminate parental rights, including the best-interest finding. Tex. Fam. Code § 161.001(2); *In re J.F.C.*, 96 S.W.3d 256,

263-64 (Tex. 2002). Courts consider many factors in assessing the child's best interest, including the nine factors listed in *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976) (factors include (1) the child's desires, (2) current and future physical and emotional needs of child, (3) current and future physical danger to the child, (4) parental abilities of person seeking custody, (5) whether programs are available to assist person seeking custody in promoting best interests of child, (6) plans for child by person seeking custody, (7) stability of home, (8) acts or omissions of parent that may indicate parent-child relationship is not proper, and (9) any excuse for acts or omissions of parent).

Termination proceedings are strictly scrutinized on appeal. *See Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985). With respect to our review of the factual sufficiency of the evidence, we consider the entire record, including disputed evidence, to determine "whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the State's allegations." *J.F.C.*, 96 S.W.3d at 266; *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002). "If, in light of the entire record, the disputed evidence that a reasonable fact finder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *In re J.F.C.*, 96 S.W.3d at 266.

**The testimony**

Because much of the testimony is relevant to more than one *Holley* factor regarding the child's best interest, we will review the testimony as a whole. The witnesses at trial included the child's maternal grandmother, maternal uncle, and caseworker. These witnesses recounted their observations as well as some contact with the child's father.

3

Although the child did not testify, the witnesses all testified that he wanted to stay with his grandmother, uncle, and siblings.[1] The child wanted to retain contact with his father and wrote in a letter to appellant that he loved and missed appellant, but the child told his caseworker that he did not want his father to have any power to make decisions for him. Appellant wanted the child to stay in his current placement, but wanted to retain his rights to ensure continued contact with the child. The child's maternal grandmother testified that, although she preferred that the child have no contact with his father because the child got "confused" a lot, she would permit continued appropriate contact. The child's uncle testified that he would permit continued contact as long as the child desired regardless of whether the court terminated the legal parent-child relationship.

The grandmother was approved to adopt the child, but the uncle was not. The child was doing fine in her care despite some developmental/academic deficiencies that were

_____

[1] In his reply brief, appellant complains that this decree must be reversed because of the absence of testimony from the child. He contends this testimony is necessary to the best-interest determination. He relies on a provision that the "child shall attend each permanency hearing unless the court specifically excuses the child's attendance." *See* Tex. Fam. Code § 263.302. The parties discussed the issue before the termination hearing began and expressed their agreement to permit hearsay statements regarding what the child had said about his wishes to the witnesses. The Department's attorney said, "as long as we are [in agreement] that this is what he has told the parties, this is what his wishes have been stated, that we would rather keep him out of the courtroom and keep him in school if it's okay." Appellant's attorney said, " I did agree that whatever the child has said, basically, I don't see the need to put the child through it." The trial court stated that he would prefer to avoid pulling the child out of school "unless there is a profound reason to do that because it is really disruptive." The court plainly chose not to require the child's attendance based on the child's interests and the agreement of the parties. There is no showing that the parties who testified about the child's wishes misrepresented the child's wishes. Finally, to the extent that the statute concerning attendance at permanency hearings applies to this termination hearing, it plainly states that "[f]ailure by the child to attend a hearing does not affect the validity of an order rendered at the hearing." Tex. Fam. Code § 263.302. On this record, the trial court did not err by not requiring the child to attend and testify regarding his wishes.

attributed to his absences from school in previous years. The grandmother had stopped working to take care of the children. The child's uncle socialized with the child and he attempted to establish consequences for unsatisfactory academic performance. While the uncle was unemployed for several months, he took the children to appointments because he could speak English better than the grandmother. A caseworker once found the uncle asleep on the couch in the afternoon while in charge of the children. He was about to start a new job maintaining an apartment complex. The grandmother, uncle, and children had moved three times in the eighteen months this case was pending—once being evicted for nonpayment of rent—and were contemplating a move to their previous homes in Seattle or California. Termination and adoption would improve the grandmother's monetary position by adding a $400 monthly stipend to the approximately $1,440 she received in social security payments and food stamps. There was no testimony regarding whether adoption of the other siblings would bring a similar per-child stipend.

Appellant's incarceration for an uncertain term prevents him from personally providing care for the child. He sent "maybe $100" to assist with the child's care after learning that he was the father. He had taken a parenting class in prison before knowing about this child as a means of getting out of his cell. He had fathered three other children but was not the primary caregiver to any of them. Although his attorney described appellant's parents and siblings as "quite decent" and employed, the caseworker did not inquire about their interest in adopting the children. There is no evidence that any of appellant's relatives have offered to care for or support the child. According to the maternal grandmother, they have not sent any financial support. There was no

speculation regarding when appellant might be released or what sort of financial, emotional, or physical support appellant or his relatives could provide either before or after his release.

**Conclusion**

We conclude that factually sufficient evidence was presented at trial on which the trial court could reasonably have formed a firm belief or conviction that termination of appellant's parental rights was in S.P.'s best interest. Finding no reversible error presented, we affirm the termination of appellant's parental rights.

_____

Jeff Rose, Justice

Before Justices Puryear, Pemberton, and Rose

Affirmed

Filed: June 26, 2013

6